UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

UNITED STATES OF AMERICA     )
                                     )
v.                                 )         No. 1:03-cr-113 **-02**
                                   )         *Edgar*
DAMIEN M. JONES             )

## <u>SUPPLEMENTAL MEMORANDUM</u>

This supplemental memorandum is written after the *Booker*[1] resentencing hearing

in this case to supplement the memorandum originally filed March 3, 2004 [Doc. 213] in connection

with the first sentencing of defendant Jones.

At sentencing on February 9, 2004, and June 13, 2005, defendant Jones challenged

the amount of the loss attributable to him under U.S.S.G. § 2B1.1(b) per paragraph 27 of the

presentence report. Defendant Jones was accorded **10 levels** because this Court determined the loss

to be **$160,506.20**, which is in excess of the $120,000 required for 10 levels under U.S.S.G,

§ 2B1.1(b)(1)(F). The following is this Court's rationale for this determination.

Defendant Jones pled guilty to a conspiracy to commit credit card fraud, 18 U.S.C.

§ 1029(b), as well as several substantive accounts of credit card fraud. There is no dispute that the

total documented loss occasioned by this conspiracy was $160,506.20. Larry Cowan, one of

defendant Jones' codefendants, went to trial. Defendant Jones testified in that trial. It is clear from

that testimony that defendant Jones was, along with Cowan, a prime mover in setting up the credit

---

[1]     *United States v. Booker*, 543 U.S. — (2005).

card skimming scheme which was the substance of this conspiracy. Defendant Jones obtained a device from Cowan, and then recruited defendant Joshua Hubbard, who was then working as a waiter at Applebee's Restaurant, to skim the numbers off of customers' credit cards. Joshua Hubbard in turn recruited his wife, defendant Jancy Hubbard, into the scheme. The credit card numbers were forwarded to Larry Cowan, who was able, with the use of a laptop computer and another device, to put the stolen credit card numbers on other cards. Defendant Jones fraudulently used one or more of these tainted cards in December 2002, and enlisted the help of others in doing so. When defendant Jones heard that law enforcement was investigating this activity, he claims he "withdrew" from the conspiracy by attempting to turn himself in on December 23, 2002, at the Hamilton County, Tennessee, jail. However, the criminal activity that defendant Jones had initiated did not stop. The skimmed credit card numbers continued to be used into early March 2003 by coconspirators. Losses caused by the continued use of these cards are included in the above $160,506.20 amount. There is no evidence that defendant Jones ever told the Hubbards, Larry Cowan, or any other coconspirator to cease and desist, or even that he had "withdrawn" from the conspiracy.

At sentencing, defendant Jones maintained that he can be held responsible only for the actual credit card transactions in which he had some direct involvement, all of which occurred before his asserted withdrawal on December 23, 2002. This would exclude fraudulent credit card transactions conducted by coconspirators both before and after defendant Jones alleged conspiracy withdrawal. Jones' contention was, citing *United States v. Jenkins*, 4 F.3d 1338, 1347 (6th Cir. 1993), that the loss from this other activity was beyond the scope of the criminal activity which defendant Jones agreed to jointly undertake.

Under U.S.S.G. § 1B1.3, defendant Jones is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." Here, all of the losses incurred as a result of the credit card skimming were clearly foreseeable to defendant Jones. This Court **EXPLICITLY FINDS** in accordance with *Jenkins* that all of this loss was within the scope of the activity that defendant Jones agreed to undertake. He most certainly knew that the skimmed card numbers would be used to fraudulently obtain goods and services in the future, even after his voluntary cessation of criminal activities in December 2002. Having helped set in motion a fraud which he knew was continuing, he cannot avoid responsibility for the consequences by discontinuing his direct participation.

While it is true, as a general proposition, that a conspirator can avoid criminal responsibility that would otherwise accrue under the *Pinkerton* doctrine for substantive crimes occurring after withdrawal from a conspiracy, it is defendant Jones' burden to prove withdrawal. *See* SIXTH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS § 3.11A and cases cited in Committee Commentary (1991). Defendant Jones has not here borne this burden. All we know is that defendant Jones tried to turn himself in at the Hamilton County Jail. He did not tell law enforcement about any details of the conspiracy, and while he told two of his co-conspirators that he was no longer a participant, Jones took no significant action to prevent credit card losses that he knew were continuing to occur.

As the Court also said at the June 13, 2005 sentencing hearing, the sentence accorded Jones would be the same as that originally imposed regardless of what the Sentencing Guidelines are in this case for the reasons expressed by the Court on the record upon consideration of several factors specified in 18 U.S.C. § 3553(a).

-3-

Therefore, because the entire loss was foreseeable to him, and because he did not take any steps to stop that loss, defendant Jones is justly responsible, for sentencing purposes, for the entire loss occasioned by the credit card skimming scheme. This is so whether or not defendant technically withdrew from the conspiracy.

ENTER this *29th day of June, 2005*.

/s/ R. Allan Edgar
R. ALLAN EDGAR
CHIEF UNITED STATES DISTRICT JUDGE